IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**SARAH MOORE**                                                                                                    **PLAINTIFF**

V.                                              **CASE NO. 5:25-CV-5123**

**PATRICK DEAKINS, in his official capacity
as WASHINGTON COUNTY JUDGE;
WASHINGTON COUNTY, ARKANSAS;
and RETURNING HOME, INC.,
an Arkansas Non-Profit Corporation**                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 23) and Brief in Support (Doc. 24) filed by Defendants Patrick Deakins, in his official capacity as Washington County Judge, and by Washington County, Arkansas (collectively, "Washington County Defendants"). They ask that the Amended Complaint (Doc. 21) be dismissed for failure to state a plausible claim of illegal exaction under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Sarah Moore filed a Response in Opposition to the Motion (Doc. 25) and Brief in Support (Doc. 26), and Washington County Defendants filed a Reply (Doc. 31). For the reasons stated below, the Motion is **GRANTED**.

### I.  BACKGROUND

According to the Amended Complaint, various persons employed by Washington County began discussing in the late summer or early fall of 2024 various ways to address mental health and substance abuse programming for pretrial detainees housed in the Washington County Detention Center ("WCDC"). Plaintiff Sarah Moore, the Executive Director of a non-profit organization called the Arkansas Justice Reform Coalition became

1

aware of the County's interest and wished to participate in the ongoing discussions. On October 21, 2024, she submitted an Arkansas Freedom of Information Act ("FOIA") request to Separate Defendant Patrick Deakins, the County Judge, requesting all documents and communications concerning an inpatient mental health facility called the "Washington County Crisis Stabilization Unit" ("CSU"), including the uses of its building for programming by the WCDC, its service providers, and its funding from May 2024 to the present. In response to the FOIA request, Ms. Moore only received a copy of an Outlook calendar entry and several emails. (Doc. 21, ¶ 10).

About three months later, on January 14, 2025, County Judge Deakins signed a County Court Order finding that:

- Washington County had recently secured grant funding for a drug treatment program for the County's pretrial detainee population;
- a non-profit service provider called Returning Home was uniquely situated to operate a drug treatment program for County detainees at scale;
- other providers could offer some, but not all, of the services Returning Home could provide; and
- no other local providers expressed interest in operating the program at this stage and at the scale offered by Returning Home.

*See id.* ¶ 21. The County Court Order did not attach any documentation explaining why the County had not subjected Returning Home's contract to a competitive bidding process.

On February 20, 2025, the Washington County Quorum Court passed an ordinance creating the Community Rebuilding Initiative Grant Fund ("CRI Fund"), and County Judge Deakins signed the ordinance into law. *See* Doc. 3, p. 12. This ordinance

2

recognized that the CRI Fund had been awarded a grant of $355,455.74 from the Arkansas Department of Finance and Administration ("DFA"). Ms. Moore contends that this grant money originated from the federal government—through the Department of Justice's Office of Justice Programs ("OJP")—and was passed through the Arkansas DFA for distribution to the County. In addition to the OJP/DFA funds, the County contributed $575,000.00 to the CRI Fund from the County's General Fund.

On November 20, 2025, the Quorum Court appropriated an additional $378,787.68 for the CRI Fund to be used by Returning Home for residential substance abuse treatment. This second appropriation, like the first, was sourced from both federal OJP funds (passed through the Arkansas DFA) and the County's General Fund. *See* Doc. 36, ¶ 4.

Ms. Moore, in her capacity as a taxpayer residing in Washington County, now brings suit against County Defendants for illegal exaction. Under Arkansas law, an illegal exaction claim alleges the misapplication of public funds or recovery of funds wrongly paid by the government. *See Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 128 (1992). Ms. Moore contends that public funds generated from tax dollars have been misapplied or misspent by the County to fund Returning Home's substance abuse treatment program for pretrial detainees. Her first argument is that County Defendants violated 2 C.F.R. § 200.320, which requires that the recipient of federal funds engage in a competitive bidding process or obtain advance OJP approval for noncompetitive procurement. Ms. Moore believes that County Defendants were obligated to engage in competitive bidding or get advance OJP permission before distributing CRI Fund money

to Returning Home. Her second argument is that County Defendants violated Arkansas Code § 14-22-106(22)(B) by failing to attach documentation to County Judge Deakins's January Order to prove that competitive bidding was not necessary, since only one provider—Returning Home—was equipped to provide the inpatient drug treatment services the County needed.

In addition to her illegal exaction claim, Ms. Moore argues that the County's award of federal and state funding to Returning Home violates Equal Protection because Returning Home only serves male pretrial detainees, so female pretrial detainees cannot benefit from the program. Ms. Moore seeks a declaratory judgment that the County's contract for services with Returning Home is void and its funding method illegal because the County failed to comply with federal and state procurement laws. She also requests injunctive relief to stop County Defendants from disbursing CRI Funds to Returning Home and to force Returning Home to refund the money it already received from the County.

In the Motion to Dismiss now before the Court, County Defendants argue that Ms. Moore has failed to state a plausible illegal exaction claim based on a violation of either federal or state law. Beginning with federal law, County Defendants observe that the competitive-bidding regulation at 2 C.F.R. § 200.320 contains certain exceptions, and Ms. Moore admits that the January 2025 Order explained reasons why Returning Home's contract qualified as an exceptional case. *See* Doc. 21, ¶ 12. County Defendants contend that Ms. Moore does nothing more than speculate that the County's reasons were unfounded and that competitive bidding was, in fact, required. They claim she points to no community organizations that were similarly situated to Returning Home and that

4

would have been interested in engaging in competitive bidding. Along the same lines, they believe there are no facts to show that Returning Home was *not* the only possible source for the County's particular inpatient substance abuse service needs. They disagree with Ms. Moore that Arkansas law required County Judge Deakins to attach supporting documentation to the Order awarding the contract to Returning Home.

Ms. Moore opposes the Motion to Dismiss and believes she has stated enough facts to plausibly show that County Defendants were obligated to engage in competitive bidding before allocating federal funds to Returning Home and that Arkansas law required County Judge Deakins to *actually attach* documentation supporting his noncompetitive procurement decision to the January 2025 Order.

## II.  LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Instead, "[t]he complaint

must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

### III. DISCUSSION

#### A. Illegal Exaction

Ms. Moore contends that County Defendants misapplied or illegally spent tax dollars in violation of: (1) federal law, namely, the competitive bidding requirements of 2 C.F.R. § 200.320, and (2) Arkansas law, namely, the documentation requirements of Arkansas Code § 14-22-106(22)(B) and the competitive bidding requirements of §§ 14-22-101 to 14-22-115. The Court addresses each argument below.

##### *1. Federal Law*

According to the Amended Complaint, County Defendants committed illegal exaction by failing to adhere to the procurement rules for using federal funds, as set forth at 2 C.F.R. § 200.320. They allocated over $250,000.00 in federal funds to pay Returning Home for providing drug treatment services to the County's pretrial detainees. Ms. Moore reads the regulation as requiring competitive bidding before funds of that magnitude may be allocated, or at the very least, advance written approval by a federal agency or pass-through entity to forgo competitive bidding.

2 C.F.R. § 20.320(c)(2) states that a recipient of federal funds—such as Washington County—"may use a noncompetitive procurement method" if "[t]he procurement transaction can only be fulfilled by a single source." According to the Amended Complaint, on January 14, 2025, the County made an official determination memorialized in a County Court Order signed by County Judge Deakins that a

6

noncompetitive procurement method was appropriate because Returning Home was uniquely capable of operating a drug treatment program at the contemplated scale for pretrial county detainees, no other providers offered all aspects of the contemplated program, and no other providers had expressed interest in operating the program at this stage and at this scale. (Doc. 21, ¶ 12).

If the assertions in County Judge Deakins's Order are factually supported, then § 20.320(c)(2)'s exception applies, and the County was not required to engage in competitive bidding. Ms. Moore contends this exception does not apply. But her say-so is not enough to state a claim. Instead, she must point to facts to indicate Returning Home was *not* the only source for these services, other providers *could have* offered these services, or other providers were consulted and *did not express interest* in providing these services. Her pleadings contain no such facts. She relies exclusively on the FOIA request she sent to County Judge Deakins in October 2024 seeking:

1. Any and all documents and communications for the Washington County Crisis Stabilization Unit for county uses to include jail or programming uses, other building uses, building improvements or needs, and providers of services using the building from May 2024 to present

2. Any and all communications and documents from any Washington county official or staff to/from any Arkansas state legislator about a CSU or the CSU building for providers, funding, or other uses from May 2024 to present

3. Any and all communications and documents from any Washington county official or staff to/from any programming or service provider about a CSU or the CSU building for providers, funding, or other uses from May 2024 to present

7

(Doc. 3, p. 9). Ms. Moore claims she received a paltry number of documents in response to her request, which leads her to believe the County never meaningfully explored other programming sources than Returning Home.

The above is supposition on Ms. Moore's part and is insufficient to state a claim. Her FOIA request was issued months before the County Judge's Order and did not request the specific documents upon which the Order now relies. She does not claim she issued a FOIA request for the documents supporting the Order, and without them, the Amended Complaint's allegations are mere speculation. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Ms. Moore's legal exaction claim based on the violation of federal law fails to survive legal scrutiny.

### 2. State Law

Ms. Moore also alleges that County Defendants have committed an illegal exaction by failing to adhere to the service procurement procedures required under Arkansas law. Specifically, she points to Arkansas Code § 14-22-106(22)(B), which states that if a government entity asserts that a service may only be purchased "from a single source"—as is the case here—such a purchase "shall be supported with":

> (i) Documentation concerning the exclusivity of the single source; and
>
> (ii) A county court order filed with the county clerk that sets forth the basis for the single source procurement.

Ark. Code Ann. § 14-22-106(22)(B)(i)–(ii).

8

Ms. Moore agrees that the second part of the test has been satisfied, in that County Judge Deakins filed a County Court Order setting forth the bases for single source procurement from Returning Home. But as to the first part of the test, Ms. Moore believes County Defendants violated the law by "fail[ing] to attach documentation" to the Order "as to the exclusivity of a single source." (Doc. 21, ¶ 40c.). County Defendants insist they were not required to attach any documentation to the Order.

Defendants clearly have it right: The statute does not contain the word "attach," much as Ms. Moore would like it to. Instead, the statute says that a purchase "shall be supported with . . . Documentation." Ark. Code Ann. § 14-22-106(22)(B)(i). The statute only requires supporting documentation *to exist* and, presumably, to be maintained in County Defendants' possession if requested. Therefore, the Amended Complaint fails to plausibly allege a violation of Arkansas law sufficient to support an illegal exaction claim.

### B. Equal Protection Claim

"A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994). Ms. Moore does not contend that County Defendants intentionally or purposefully sought to discriminate against female pretrial detainees when they awarded CRI Funds to Returning Home. Quite the contrary: She acknowledges in her Supplement to the Amended Complaint that the County recently awarded more than $350,000.00 to a residential substance abuse provider serving the female pretrial detainee population. *See* Doc. 36, ¶ 20. She simply finds it "curious" that the County submitted the women's services contract for competitive bidding, but not the men's. *Id*

Setting aside Ms. Moore's curiosity in favor of the facts, the Amended Complaint does not plausibly suggest that County Defendants violated federal or state law in procuring funds for men's substance abuse services without competitive bidding. And as for the equal protection claim, it is not viable due to Ms. Moore's lack of standing. A taxpayer whose tax money is used in a discriminatory manner suffers no injury under the Equal Protection Clause unless and until the state's expenditure of funds facilities discrimination against her, personally. *See Booth v. Hvass*, 302 F.3d 849, 854 (8th Cir. 2002) (citing *Flast v. Cohen*, 392 U.S. 83, 103 (1968)). Here, Ms. Moore does not assert that she is a pretrial detainee at the WCDC or is likely to be eligible for the County's substance abuse services. Accordingly, the equal protection claim is subject to dismissal.

## IV. CONCLUSION

For the reasons explained above, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 23) is **GRANTED**, and the case is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. All other pending motions are **TERMINATED**, and the **CASE IS CLOSED**.

**IT IS SO ORDERED** on this 25th day of February, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE